Evans v. Evans.

EVANS *vs.* EVANS.

1. Where executors are directed by the will to pay money into the estate, and are personally bound so to do, and are directed out of such fund to pay a legacy to a co-executor, but fail to pay the money into the estate, such co-executor may bring suit in a court of equity in his individual right, against the executors individually, to compel the payment of the legacy.

2. In any suit which necessarily should be brought by a complainant as executor against the defendants as such, if the allegations in the bill are sufficient to bring them before the court in that character, it is not necessary that they should be styled such, either in the process, or in the commencement of the bill, or in the prayer for process.

3. Ordinarily, it is not necessary to make debtors of the decedent parties to a bill against the executor by creditors or legatees. But when there is collusion alleged or suspected between the executor and the debtors, or he refuses to collect the debts, they are proper parties ; · and in case of a charge upon real estate, the heirs or devisees are proper parties with the personal representatives.

This cause was argued on a general demurrer to the complainant's bill. The bill set forth the will of Thomas Evans, the father of the complainant and of the defendants ; and that the will was proved before the surrogate of the county of Burlington, in which testator resided, and that letters testamentary were, on the 24th day of May, 1869, issued by him to the complainant and the defendants, who were by it appointed executors. This will devised to each of the defendants certain tracts of land, subject to the payment by each of them of the sum of $4500 to his executors, within six months after testator's death. The will gave to the complainant $3000 out of the moneys directed " to be paid into the estate " by the defendants. It also gave to the executors in trust for the testator's son Thomas, $6000 out of the amount directed to be paid " into his estate " by the defendants, and directed this $6000 to be placed at interest, and the interest paid to Thomas. The bill alleged that the lands so devised to Samuel and William were respectively charged in effect with the payment of $1500 by each severally to the complainant, and alleged refusal to pay, and prayed that they might be severally decreed to pay the same with interest, and in default, that the lands so devised might be sold. It also contained the general prayer for relief.

The complainant was not styled executor in the commencement of the bill, nor were the defendants styled executors in the prayer for process.

*Mr. F. Voorhees* and *Mr. Ten Eyck*, for demurrer.

*Mr. Merritt*, contra.

THE CHANCELLOR.

The counsel for the defendant, in support of the demurrer, rely, first, upon the facts that such a bill is without precedent in courts of equity, and then upon the ground that this bill should have been filed by the complainant as executor against the defendants as executors, or that they should at least be made parties in their representative capacity.

No precedent has been shown for a suit exactly like this, but I think there are precedents founded on the same principle, which sustain this. The complainant, besides being an executor, is a legatee. His being an executor does not deprive him of his remedy in equity to recover his legacy. If it were a general money legacy, and they had exclusive possession of the personal assets out of which it must be paid, he could bring his suit against them as executors. Where one of several executors refuses to join in a suit for the benefit of the estate, the others can bring suit, but must make him a defendant; he is a necessary party, and must be made a party, either as complainant or defendant. In this case the defendants personally were bound to pay this money into the estate. Upon their failure to do so, he, as an executor, could file a bill to compel such payment. So long as they have not paid the money into the estate, the suit must be against them individually, to compel such payment. They have not paid it. If they had, the suit could be sustained against them as executors, to be paid out of this fund. This is a demonstrative legacy, and its payment cannot be enforced out of the general assets of the testator, but only out of the fund created and appropriated for it. In this case it must be held, as in the case of personal assets, that the executor who owes personally a debt, shall be held to have received assets to the amount of that debt; the suit might be maintained against them as executors. But that it might be so maintained,

would not be permitted to defeat the complainant in a suit against them individually, even if the rules of equity required them to be styled executors, or the relief to be prayed against them as executors, in order to hold them as such. ' In this case the defendants are each bound to pay into the estate the one-half of the sum claimed by the complainant, and have not paid it; he is entitled to the whole sum, and is entitled to it against them. I see no reason why, with such a right, he may not have a suit in a court of equity for relief in his individual right for a duty due from them individually and directly. The situation of the parties as co-executors makes such remedy peculiarly appropriate, and there is no reason why one suit should be brought to compel them to pay the money into the estate, and another by him to compel payment out of the estate.

Ordinarily, it is not necessary to make debtors of the decedent, parties to a bill against the executor by creditors or legatees. But when there is collusion alleged or suspected between the executor and the debtors, or he refuses to collect the debts, they are proper parties; and in case of a charge upon real estate, the heirs or devisees are proper parties with the personal representative. *Story's Eq. Pl.*, §§ 178, 180. 2 *Williams on Ex'rs* 1832.

Here is what is at least equivalent to collusion, or refusal to collect. These defendants can, then, be held individually, according to these authorities. No objection can be made that the executors are necessary parties, for all three executors are parties to this suit; they are made parties with the proper allegations to maintain a suit as executor by the complainant, or to hold defendants as executors. Those allegations are the appointment, proving the will, and probate by the proper officer.

And was it necessary that this suit should be brought by the complainant as executor against the defendants as such, the allegations in the bill are sufficient to bring them before the court in that character. It is not necessary that they

should be styled such, either in the process, or in the commencement of the bill, or in the prayer for process.

It is not necessary at law that it should be so stated in the process or in the commencement of the declaration. And where either party is there styled executor, it may be rejected as surplusage, and the suit proceed against or for him individually, though it is otherwise when the suit is brought by or against him *as* executor. 2 *Williams on Ex'rs* 1751, 1752; 1 *Chitty's Pl.* 252; *Watson* v. *Pilling,* 3 *Brod. & Bing.* 4; *Weavers' Co.* v. *Forrest,* 2 *Str.* 1232.

I know of no authority or precedent that establishes a different rule in equity. The proceedings in equity are and should be conducted with less regard to mere matters of form and technical objections than proceedings at law. There is no principle that requires a different rule. When a bill, in its body, sets forth fully facts which give the complainant a right as executor, or makes the defendant liable as such, so that the court upon these allegations can give the relief required, it is mere form and useless form, to require that either party should be so styled in the commencement or conclusion of the bill.

The demurrer must be overruled.