CHARLOTT E. VAIDEN et al., complainants-respondents,

v.

WILLIAM L. EDSON et al., defendants-appellants.

[Submitted July 3d, 1915. Decided November 15th, 1915.]

1. Where the charges in a bill of complaint show that relief is sought against a defendant as administrator, and the prayer for process is against him individually and not in his representative capacity, such a prayer does not constitute a ground of demurrer, for an inspection of the bill will disclose the capacity in which he is to answer. Nor is the situation changed because there is also a prayer for process in his representative capacity.

2. In the settlement of estates of decedents the court of chancery has concurrent jurisdiction with the orphans court, and is justified in assuming it where the remedy which can be afforded to the parties in interest in that court is defective or insufficient. The propriety of the interposition of a court of equity in a case where the orphans court has taken jurisdiction rests in the discretion and judgment of the chancellor, and a bill filed for an accounting by an administrator and the recovery of a legacy, charging fraudulent conduct in the administration of the estate through which the solicitor of the administrator made a profit as purchaser of lands belonging to the estate, is not objectionable upon the ground that the administrator has filed his account in the orphans court without charging himself with the secret profit of his solicitor, and which that court has never approved.

3. The rule with regard to multifariousness is not an inflexible one, and when the bill prays an accounting by an administrator and his solicitor, to whose hands part of the estate has come through the act of the administrator, who refuses to call his solicitor to account, and charges that the moneys in the hands of the solicitor is the result of a secret profit arising from the unlawful disposition to him by the administrator of part of the lands belonging to the estate, the bill is not subject to a demurrer upon the ground that it is multifarious, for both defendants are interested in the subject-matter of the suit, which is capable of being determined in a single issue without multiplying unnecessary litigation.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported *ante p. 65.*

The complainants, Charlott B. Vaiden, Annie M. Lane, Margaret E. Holmes and George W. Jones, filed a supplemental bill

in equity setting out that in the original bill it was charged one Henry Brown died testate, and by his last will and testament devised to his widow, for life, all his real and personal estate, and directed that after her death the real estate should be sold and the proceeds of his entire estate divided into two parts, one of which was given to the children of his widow and the other to the children of his sister; that the wife was appointed executor with another, but she alone qualified and filed an inventory, and also an account in the orphans court, from which it appeared that the personal property was absorbed in paying the testator's debts; that the wife enjoyed the real estate during life, which terminated December 28th, 1907; that upon her death William L. Edson was appointed substituted administrator with the will annexed by the orphans court, and has since held that office; that the real estate, of which the testator died seized, consisted of four tracts which are separately described; that the children of the testator's sister as well as Margaret E. Holmes, a child of his wife, had assigned to the administrator with the will annexed their respective legacies; that the complainants are four of the children of the wife, there being five, of whom one, Elias D. Jones, had assigned his share to one Maurice C. Gay, so that the only persons interested in the estate were the complainants, Gay and Edson, the substituted administrator, who was interested as administrator and also as purchaser of one-half of the estate from the legatees; that Edson collected and retained the rents, issues and profits of the real estate, but refused to account or pay over to the complainants their share; that the complainants were entitled to have an immediate sale of the lands and an accounting, and prayed that Edson and Gay answer; that Edson be decreed to account for the rents received, and that the lands be sold by order of the court and the proceeds distributed. After this recital of the original bill, the supplemental bill charges that, before the filing of the original bill, Edson sold at public vendue part of the lands, described as tracts 3 and 4 in the original bill, to an intermediary, who purchased for the benefit of one Leverett Newcomb, the solicitor of the administrator, and thereafter conveyed the lands to him. The bill further charges that, by proceedings taken under the original bill,

the court of chancery directed the administrator to make sale of tracts numbers 1 and 2, and that prior to making the order the vice-chancellor before whom the proceedings were had, notified both Newcomb and Edson that if Newcomb should become the purchaser of these lands he would not confirm the same, the decree being that all the lands except tracts 3 and 4, as described in the bill, should be sold by the administrator, and that after the sale the administrator should retain the proceeds of the sale of the land, and other moneys that had come to his hands, including the rents, issues and profits derived from the real estate, to abide the further order of the court, and that either party might make application to the court from time to time for a decree or decrees for partial or final distribution of the moneys. That the decree further provided that the land should be sold in such manner as may seem best for the interest of the complainant Margaret E. Holmes, who had an interest in tracts numbers 3 and 4 but none in numbers 1 and 2 as described therein. The bill further avers that, notwithstanding the order and direction of the court of chancery that Edson should file his account as such administrator in the orphans court of the county of Cumberland within thirty days from the date of said decree, which was October 30th, 1911, no such account was filed until June 21st, 1912, on which date he did file with the surrogate of the county of Cumberland an account to which exceptions were filed and overruled, but because of other manifest errors in the account Edson was ordered by the orphans court to restate his account, which order has never been complied with; that two years have elapsed since the order of the chancellor directing the accounting, and that there is no good reason why the order should not have been obeyed. The bill further charges that the sale of the tracts 3 and 4, made by the administrator before the original bill was filed, was in truth and in fact made to a trustee for Newcomb, who acted at the sale as solicitor and counsel for Edson as administrator; that Newcomb has since sold the property for several thousand dollars in excess of the price paid by him, and that in equity such profit is held in trust for the estate of Henry Brown; that when the decree of October 30th, 1911, was made, complainants were not apprised of the fact that these two

tracts had been bought by Newcomb through an agent. The bill further charges that the orphans court is a court of limited jurisdiction and without power to charge Newcomb, on the accounting directed to be made in the orphans court, with the aforesaid profits, and that the conduct of Edson touching the administration of the estate has operated to defraud complainants of their property rights, and that he should be required to account forthwith in the court of chancery for the moneys in his hands, and the prayer is that Newcomb be also required to account for the aforesaid profits, and that Edson be required to file his final account in this court, and that the moneys, including the profit made by Newcomb, be distributed to the person entitled thereto, and that no further proceedings touching the account be allowed in the orphans court, and also a prayer for general relief. The prayer for subpœna is against Edson individually and as administrator, Gay and Newcomb. To this bill the defendants filed separate demurrers.

*Mr. Leverett Newcomb* and *Mr. Lewis Starr,* for the appellants.

*Mr. Louis H. Miller,* for the respondents.

The opinion of the court was delivered by

BERGEN, J.

The vice-chancellor overruled the demurrers, the propriety of which action is the question presented for review. As there are different grounds advanced by each defendant in support of their respective demurrers, they will be separately considered and determined. The first ground upon which Edson relies is that process is prayed against him individually and also as administrator, claiming that as the bill contains no charges that would justify a decree against him individually, he is entitled to a dismissal for that reason.

That the bill charges him with so administering the estate in his control as to entitle complainants to relief, if the charges are true, we think clearly appears, and the prayer for relief is confined to his liability in that capacity. The only question pre-

sented on this branch of the case is whether the bill is demurrable because the prayer for process is against him individually and also as administrator? We are of opinion that it is not, for it is not necessary that the prayer for process designate the capacity in which he is made a defendant if he be properly charged in the bill, for by an inspection of it he can readily ascertain in what character or interest he is called upon to answer. "The subpoena only gives him notice that there is a bill filed against him, and, if he be properly charged in the bill as executor or devisee, or in any other capacity, it is not a good objection that the subpoena is issued against him generally." *White* v. *Davis, 48 N. J. Eq. 22*. That in this case the prayer is for process generally can make no difference, for he is thereby notified that there is a bill filed against him, and the nature of the relief prayed and the charges upon which it is founded will appear from reading the bill. Nor is the situation changed because there is also a prayer for process in his representative capacity.

The next ground of demurrer is that sufficient facts are not disclosed in the bill to support the allegation of his fraudulent conduct as administrator. There is no merit in this point. The conduct of the administrator in refusing to settle his account in the orphans court, in selling part of the land to his solicitor, and the refusal to compel him to account for and pay over the secret profits made by him, which belong to the complainants as legatees, is a sufficient specification of fraudulent conduct.

Another ground urged is that the orphans court has partially proceeded with the accounting, and that no good reason sufficient to justify the court of chancery in assuming jurisdiction appears. Concerning the power of the court of chancery to assume jurisdiction of a case of this character, it was said as long ago as 1853 by Chancellor Williamson, in *Van Mater* v. *Sickler, 9 N. J. Eq. 483*, that, in the settlement of estates of decedents, equity has concurrent jurisdiction with the orphans court, "but where jurisdiction has been assumed by the orphans court, it is not the right of a party to change the forum of settlement at his pleasure. The chancellor must exercise his discretion and judge as to the propriety of the court of chancery interposing. There are many cases where the character of the estate is such that the remedy

which can be afforded to parties interested, by the orphans court, is defective." We think, under the facts stated in this bill, the power of the orphans court to afford a complete remedy is defective. A part of the estate to be charged to the administrator is the profits made by Newcomb at the sale of the lands purchased by him, and this is a matter over which the orphans court has no jurisdiction, and the character of the controversy is such as to require the aid of the court of chancery in ascertaining and securing the rights of those interested therein, and in such case the court of chancery is justified in bringing the whole matter into that court in order that the estate may be completely settled without a multiplicity of suits. *Filley* v. *Van Dyke, 75 N. J. Eq. 571.*

The defendant Gay demurs because no wrong is charged, and that there is no prayer for relief against him. The bill shows that Gay is a purchaser of one of the shares of the estate, and therefore entitled to a part of the entire proceeds including the profits made by Newcomb, and he is, therefore, not only a proper but a necessary party. He is in the position of one, who, having an interest in the subject-matter, refuses to join in the bill of complaint in a case which could not be proceeded with unless he was a party. It is not unlike making a person who holds a second mortgage a party defendant where the decree ordinarily will be in his favor as to the amount due and the extent of his lien.

Newcomb demurs first upon the ground of complainants' laches, and he urges that the land which he purchased was sold to him on the 30th day of October, 1909, by virtue of an order of the orphans court, and that complainants are only entitled to have the sale set aside when they act promptly. But the bill alleges that, at the time when the original bill was filed, they had no knowledge that Newcomb was the purchaser, and, in addition to this, the supplemental bill does not seek to set aside the sale but to recover a secret profit made by Mr. Newcomb as trustee, which he should pay over to the administrator to be by him accounted for. Under these conditions the delay cannot be said to amount to laches.

The next ground urged by Newcomb is that the bill is multifarious, because the relief prayed against Newcomb is distinct from that to which complainants might be entitled against Edson as administrator. In considering this point we must bear in mind that this is an administration suit for the purpose of gathering in the entire assets of the estate and to require the administrator to fully account.

The bill charges that the administrator sold the land to Newcomb, his solicitor, through an intermediary who bought in trust for Newcomb; that Newcomb resold the land at a large profit, which the administrator has taken no steps to recover for so long a time as to justify the conclusion he does not intend to. The administrator refuses to act and the bill is filed by those to whom he holds a fiduciary relation to compel him and his solicitor, the two wrong-doers, to account. If the bill correctly states the facts it is the duty of the solicitor to pay over the profit he has thus made to the administrator, as the representative of the complainants, in order that he may account to them.

The case made by the bill is that the solicitor of Edson as administrator has in his hands, belonging to the estate, a profit made through the joint act of a trustee and his solicitor acting for the beneficiaries under the will, which the administrator refuses to collect or the solicitor to pay over to him, and the prayer is, in substance, that each account in order that the estate may be administered. The relief sought is not distinct, but relates to a common subject-matter, and is in furtherance of a single purpose, which is the bringing in of the assets of the estate and the distribution thereof, a portion of which is fraudulently withheld by the solicitor of the administrator who refuses to make him disgorge, thus assisting in the fraud. The theory of demurrant is that the complainants should, under these conditions, institute two suits to bring in the assets. Mr. Justice Depue, speaking for this court, said in *Lehigh Valley Railroad Co. v. McFarlan, 31 N. J. Eq. 135:* "The rule with regard to multifariousness, whether arising from the misjoinder of causes of action or of defendants therein, is not an inflexible rule of practice or procedure, but is a rule founded in general con-

venience which rests upon a consideration of what will best promote the administration of justice without multiplying unnecessary litigation on the one hand or drawing suitors into needless and unnecessary expenses on the other, * * * in allowing or disallowing objections of this kind, the courts are guided by the consideration whether there is a subject-matter in dispute in which all the defendants are interested, which is capable of being determined in a single issue, and the determination of which, in that method, would not involve the defendants severally in the needless expenses of the litigation of matters in which they have no concern." In this case the issue is whether through the joint act of the two defendants, one in retaining the secret profits and the other by unlawfully consenting thereto by not acting when he should, the legatees are deprived of their equitable rights. This is a subject-matter in which both defendants are interested which is capable of being determined in a single issue in such manner as will best promote the administration of justice. We are of opinion that the relief asked against these two defendants is not, under the charges in this bill, so distinct and unrelated to a common subject-matter as to render the bill objectionable upon the ground of multifariousness.

The order appealed from will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—15.

*For reversal*—None.